**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for CRESCENT BANK & TRUST COMPANY,** )<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 2:13-cv-00162-WCO** |
| **Plaintiff,** )<br>) | |
| **v.** )<br>) | |
| **J. DONALD BOGGUS, JR., CHARLES R. FENDLEY, JOHN S. DEAN, SR., RYKER J. LOWE, and RICHARD M. ZORN,** )<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** ) | |

<u>**PLAINTIFF'S MOTION TO ADOPT ESI PROTOCOL**</u>

The Federal Deposit Insurance Corporation, as Receiver for Crescent Bank & Trust Company ("FDIC-R"), moves the Court for an order adopting the proposed ESI Protocol attached hereto as Exhibit A to govern the production of electronically stored information ("ESI") in this action.  In support of this motion, the FDIC-R submits the accompanying Brief in Support of Plaintiff's Motion to Adopt ESI Protocol and the Declaration of Raymond Rivard in Support of Plaintiff's Motion to Adopt ESI Protocol, attached hereto as Exhibit B.

**WHEREFORE,** the FDIC-R prays that this Court grant its motion and adopt its proposed ESI Protocol in its entirety.

Dated this 14th day of April, 2015.

Respectfully submitted,

 */s/ Samuel D. Almon*
Samuel D. Almon
Georgia Bar No. 141432
SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street, NW
Atlanta, GA 30309
Tel:  (404) 437-7000
Fax: (404) 437-7100
salmon@schiffhardin.com

Antony S. Burt (admitted *pro hac vice*)
Paula M. Ketcham (admitted *pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
aburt@schiffhardin.com
pketcham@schiffhardin.com

*Attorneys for the Federal Deposit Insurance Corporation, as Receiver for Crescent Bank & Trust Company, Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for CRESCENT BANK & TRUST COMPANY,** | ) ) ) ) | |
| | ) ) | **CIVIL ACTION NO. 2:13-cv-00162-WCO** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **J. DONALD BOGGUS, JR., CHARLES R. FENDLEY, JOHN S. DEAN, SR., RYKER J. LOWE, and RICHARD M. ZORN,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO ADOPT ESI PROTOCOL

Samuel D. Almon
Georgia Bar No. 141432
SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street, NW
Atlanta, GA 30309
Tel:  (404) 437-7000
Fax: (404) 437-7100
salmon@schiffhardin.com

Antony S. Burt (*pro hac vice*)
Paula M. Ketcham (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
aburt@schiffhardin.com
pketcham@schiffhardin.com

*Attorneys for the Federal Deposit Insurance Corporation, as Receiver for Crescent Bank & Trust Company, Plaintiff*

The parties have negotiated in good faith for several months in an attempt to agree upon a joint protocol to govern the production of electronically stored information ("ESI").  While they have reached agreement on many aspects of an ESI protocol, two points of disagreement remain: (1) whether the FDIC-R must manually review every electronic file identified by the parties' agreed-upon search terms prior to producing it; and (2) whether the FDIC-R must pay to convert electronically stored information from the native, searchable format in which it is ordinarily maintained to the static image format demanded by Defendants.  For the reasons explained below, the law does not support Defendants' demands, and the FDIC-R respectfully requests that the Court adopt the protocol attached hereto as Exhibit A.

## I.  FACTUAL BACKGROUND

Defendants are former officers and directors of Crescent Bank & Trust Co. ("CBT" or the "Bank").  The FDIC-R alleges that their negligence, gross negligence, and breaches of fiduciary duties resulted in the loss of tens of millions of dollars to CBT, ultimately resulting in the Bank's failure in 2010 and the FDIC-R's appointment as receiver.  (*See generally* Complaint, ECF No. 1.)

The FDIC-R, as a governmental entity, represents the public's interests in resolving the CBT receivership.  *See, e.g.*, *FDIC v. First Heights Bank, FSB*, No.

2:95-CV-72722, 1998 WL 34371955, *2 (E.D. Mich. 1998) (citing *RTC v. Elman,* 949 F.2d 624, 629-30 (2nd Cir. 1991); *FDIC v. Cafritz*, 762 F. Supp. 1503, 1509 (D.D.C. 1991)).  When the FDIC was appointed receiver for CBT, it immediately succeeded to all of CBT's documents, electronic or otherwise.[1]

When the FDIC-R took over as receiver, it collected and processed documents in the Bank's files, both paper and ESI—approximately 1.6 terabytes of data, including 18,737,169 Oracle data records, approximately 7,182,290 files, and 65,214 scanned paper documents.  (Declaration of Raymond Rivard ("Rivard Decl.") ¶¶ 3, 4.)  The FDIC-R scanned CBT's hard-copy documents, converted the paper documents into text-searchable files, and created an inventory list that identifies each folder or binder in which documents were found, the box in which the folder or binder was placed, and the name of the custodian or location where the files were found.  (*Id.* ¶ 5.)  The electronic copies of scanned documents are stored in folders in a database that correspond to the physical location where they were found.  (*Id.* ¶ 6.)  The FDIC-R has provided Defendants with a copy of the 171-page index to this "Scanned Documents" database.  (*Id.*)

---

[1] At the moment of receivership, CBT "vanished in a puff of smoke," *Buczkowski v. FDIC-R/Superior Bank, F.S.B.*, 415 F.3d 594 (7th Cir. 2005), and the FDIC-Receiver automatically succeeded to all of its rights, titles, powers, and privileges. 12 U.S.C. § 1821(d)(2)(A)(i).

In addition to the paper documents collected from the Bank, the FDIC-R collected a voluminous amount of ESI, including (i) all emails and attachments maintained on the email server at the time of collection (*i.e.*, all emails contained in the active accounts for CBT email users), (ii) hundreds of thousands of "loose files" (*e.g.*, Microsoft Word files, Microsoft Excel files) collected from computers, and personal, shared, and departmental shared drives, and (iii) data stored in dozens of databases maintained by the Bank (*i.e.*, databases tracking loan application data and loan account histories). (*Id.* ¶ 7.) The ESI collected from CBT generally is maintained in its native format (*i.e.*, as the same file types as the data existed when it was created, used, and accessed at the Bank), including metadata. (*Id.* ¶ 8.)

Following collection, the FDIC-R expended considerable resources to make these paper documents and ESI searchable in a sophisticated manner. The collection, conversion, and processing of these scanned documents and ESI has cost the FDIC-R approximately $91,401 to date. (*Id.* ¶ 9.)

After the closing of CBT, the FDIC-R conducted an investigation that led it to file this action. Discovery commenced several months ago, and the parties have conferred and engaged in ongoing discussions regarding the production of documents. The parties agreed that the FDIC-R would engage in a two-stage

3

production process.  In "Phase I," the FDIC-R produced certain "core" documents that were readily identifiable and are the documents most likely to be relevant to the parties' claims and defenses.  (*See* Rivard Decl. ¶ 13; Exh. A ¶ 8(a).)  Phase I documents included, for example, the files for the loss transactions at issue, minutes of CBT board and committee meetings, CBT loan policies, and CBT's file copies of Reports of Examination performed by the FDIC in its corporate capacity (the "FDIC-C").

Defendants have also subpoenaed a wide range of documents from the Georgia Department of Banking and Finance ("GDBF"), the FDIC-C, and Renasant Bank, which assumed many of CBT's loans and much of its business, including most of the loss transactions at issue in this case.  (*See* ECF Nos. 54, 56, 57 (Defendants' Notices of Intent to Serve Subpoenas).)  Together, the Phase I documents and the documents to be produced by the GDBF, the FDIC-C, and Renasant Bank will likely constitute most of the relevant documents in this case.

In addition to the Phase I production, the FDIC-R also agreed to produce documents in a second round, "Phase II."  (*See* Exh. A ¶ 8(b).)  In Phase II, the FDIC-R agreed to identify and produce CBT ESI using search terms agreed to by the parties through an iterative process, applied to agreed-upon data repositories and custodians.  (*Id.*)  (The FDIC-R has provided extensive information to

4

Defendants regarding the data repositories in which CBT documents are stored.)  It is Phase II where the disagreement between the parties arises.

The FDIC-R plans to produce ESI as it was kept in the usual course of business[2]—in native format for native documents, with all associated, processed, available metadata describing created date, author, file path, document name, text of the file, custodian, and other pertinent information.  (*Id.* at 11-15.)  Under the FDIC-R's proposal, it will identify presumptively responsive documents using search terms developed collaboratively by the parties through multiple iterations, and produce the presumptively responsive documents without conducting a manual review for responsiveness of each document or page of ESI.  (*Id.* ¶ 8(b).)  By producing the ESI together with relevant metadata, the FDIC-R will produce the documents as kept in the usual course of business.  It will organize the ESI by the search terms that identified the particular ESI, and will associate each set of search terms with the request for production to which they relate.  The FDIC-R informed Defendants that should they desire production of the ESI in static image format,

[2] Under 12 U.S.C. § 1820(f), when the FDIC, in its role as receiver, gathers documents from failed banks, those documents constitute the FDIC's "original record[s] for all purposes."

such as a tagged image file format ("TIFF"),[3] the FDIC-R proposes to charge Defendants its cost of $.03 per page for converting native files to static images. (*Id.* ¶ 12.)

Defendants, however, insist that the FDIC-R must manually review each and every page of ESI or document identified by the parties' search terms for relevance, a costly exercise that adds little or no benefit given both the availability of sophisticated litigation software to search and analyze the ESI and the virtual certainty that Defendants' counsel have and will use such software and electronic search techniques on the produced documents.  Defendants further insist that the FDIC-R must shoulder the cost of converting native files to static image format, even though there is virtually no advantage to the use of static images, despite the fact that the FDIC-R has already spent (and does not seek to recoup) over $91,000 collecting and processing ESI, and despite the fact that the FDIC-R has produced the documents most likely to be relevant in Phase I, at no cost to Defendants.

Defendants' proposal is burdensome, inequitable, and interposed for no apparent purpose other than to increase the costs of this litigation.  The FDIC-R's

---

[3] A TIFF is a file that has been converted from the native application in which the file was created (*e.g.*, Microsoft Word) into a static image that cannot be manipulated.  TIFF files generally contain substantially less metadata than the original native files.

hit counts based on preliminary search terms indicate that Phase II is likely to involve the identification of over 150,000 unique documents.  (Rivard Decl. ¶ 10.)  At an estimated review rate of 60 documents per hour, a manual review is likely to take over 2500 hours of attorney time, and well over $125,000 in attorneys' fees, even if the FDIC-R were to engage contract attorneys to review the documents instead of using its retained counsel.  (*Id.* ¶ 11.)  Those costs, in terms of both time and money, are wildly disproportionate to the  circumstances of this case and to any conceivable benefit that will be provided.   Nor does the law require a laborious, expensive, pointless, manual review.   As described below, courts in similar cases, involving like quantities of ESI, have not required such reviews.

The FDIC-R is aware that the Court declined to adopt an ESI protocol with some of the FDIC-R's proposed characteristics in *FDIC v. Stovall*, No. 2:14-cv-00029-WCO (N.D. Ga. Oct. 23, 2014), ECF No. 42.   However, that decision should not determine the result here, for several reasons.  First, the circumstances of this case are sufficiently different that the Court's concerns in *Stovall* do not apply here.  For instance, there was no factual showing of burden in *Stovall*, but here, the FDIC-R has identified specific facts demonstrating a burden.  Additionally, in *Stovall*, the reason the Court required the FDIC-R to perform a manual review was to meet its Rule 34 obligation of organizing and labeling

7

documents to correspond to specific requests for production. *Id.* at *6. Here, however, the FDIC-R will produce ESI as kept in the usual course of its business, so *Stovall's* rationale does not apply.[4] Further, in the *Stovall* briefing, the parties did not discuss the issues addressed in this motion, so the Court did not have the benefit of the case authority or rationale supporting the FDIC-R's proposed ESI Protocol here.

For these reasons and those described below, the Court should enter the FDIC-R's proposed ESI Protocol and reject the protocol offered by Defendants.

## II.   <u>ARGUMENT</u>

### A.   <u>On the Facts of This Case, the FDIC-R's Use of Search Terms to Identify Responsive Documents Satisfies its Rule 34 Obligations.</u>

The FDIC-R's proposed ESI protocol calls for the use of agreed-upon search terms to locate ESI that is presumptively responsive to Defendants' requests for production, which the FDIC-R will then produce to Defendants. (*See* Exh. A ¶

---

[4] Rule 34(b)(2)(E)(i) provides parties with two options for producing documents: a party must produce documents *either* (1) "as they are kept in the usual course of business" *or* (2) "must organize and label them to correspond to the categories in the request[.]"  A producing party "may choose either of the two methods for producing the documents." *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06–2318–JWL–DJW, 2007 WL 3010343, *3 (D. Kan. 2007).  Defendants have agreed that the FDIC-R may produce ESI as it is kept "in the usual course of business," and need not organize and label its production.  Accordingly, the FDIC-R plans to produce ESI as kept in the usual course of its business.

8(b).)   This process is consistent with Rule 34's requirement that a responding party "produce and permit the requesting party to inspect, **copy**, test, or sample . . . electronically stored information."   Fed. R. Civ. P. 34(a)(1)(A) (emphasis added). It fairly aligns the parties' discovery obligations with respect to document review and production, and is well within the standards established by courts, as well as ESI experts.   Defendants, however, have insisted that the FDIC-R engage in a manual, page-by-page review of all documents and ESI that it identifies through the use of search terms.   Not only would such a manual review be costly, unnecessary, and inconsistent with the proportionality requirements of Rule 26, but, as explained below, numerous courts have held that a manual review is not required when presumptively responsive ESI is located using search terms.

### 1.   In Similar Cases, This Court and Other Courts Have Not Required a Manual Responsiveness Review.

For example, in *Williams v. Taser Int'l, Inc.*, No. 1:06-CV-0051-RWS, 2007 WL 1630875 (N.D. Ga. June 4, 2007), the court recognized that the use of search terms to identify presumptively responsive documents satisfies a party's discovery obligations.   There, the court provided its own search terms to "create a universe of presumptively responsive documents."   *Id.* at *6.   Despite the fact that the requesting party would "likely be required to wade through a significant number of

9

documents[,]" the court did not order the producing party to review the documents generated by the search terms to weed out any that were nonresponsive. *Id*. at *7.

Similarly, the court in *FDIC-R/Broadway Bank v. Giannoulias*, No. 12 C 1665, 2013 WL 5762397 (N.D. Ill. Oct. 23, 2013), held that "[e]mploying search terms to search ESI" constitutes "a reasonably comprehensive search strategy," and refused to require the FDIC-R/Broadway Bank to conduct a manual review of ESI identified by the search terms. *Id*. at *2 (citation omitted).[5] The court concluded that "the burden such a review would impose on the FDIC far outweighs any benefit to the defendants." *Id*. It explained that "[f]alse hits are probably inevitable, but we will not require the FDIC to review thousands of documents to weed out a presumably small subset of irrelevant materials." *Id*.; *see also FDIC v. Bowden*, No. CV413-245, 2014 WL 2548137, at *7-9 (S.D. Ga. June 6, 2014) (adopting the FDIC's proposed ESI protocol, declining to require manual review of ESI, and noting that "the case law recognizes that manual search costs can be devastating, so reasonable technological search and production efforts should first be attempted").

---

[5] In *Giannoulias*, the court adopted the FDIC-R/Broadway Bank's ESI protocol over the objection of defendants. *Id.* at *4.

10

In *FDIC v. Appleton*, No. CV 11-476-JAK, 2012 WL 10245383 (C.D. Cal. Nov. 29, 2012), the court likewise held that the FDIC (as Receiver for First Centennial Bank) complied with Rule 34 by producing ESI identified using search terms, but without manual review. *Id.* at *5 n.3. The court "acknowledge[d] that plaintiff may conduct its searches utilizing search terms designed to, as far as possible, produce all responsive documents, but which are also narrowly crafted to yield only documents responsive to each Request." *Id.*; *see also FDIC v. Baldini*, No. 1:12-7050, 2014 WL 1302479, *9 (S.D. W.Va. Mar. 28, 2014) (ordering the FDIC (as receiver) to produce ESI identified with search terms, but without manual review).

As this Court is aware, the FDIC (as receiver for Buckhead Community Bank, and First Security National Bank, respectively) recently brought two lawsuits in this district against former officers and directors of the failed banks. In both of those cases, the court entered ESI protocols which called for the production of ESI without a manual responsiveness review. *FDIC v. Loudermilk*, No. 1:12-cv-04156-TWT, slip op. at *1-2 (N.D. Ga. Mar. 24, 2014), ECF No. 40 (attached hereto as Exhibit C); *FDIC v. Baker*, 1:12-CV-04173-RWS (N.D. Ga. April 18, 2013), ECF No. 20 (attached hereto as Exhibit D). In yet another case before this Court, where the FDIC (as receiver) responded to document requests by giving the

defendant access to its electronic database and letting it run its own searches, the Court denied a motion to compel against the FDIC (as receiver). *FDIC v. St. Paul Mercury Ins. Co.*, No. 2:11-CV-00167, slip op. at *4-6 (N.D. Ga. May 24, 2012) (O'Kelley, J.), ECF No. 65 ("*St. Paul* Order") (attached hereto as Exhibit E). While the Court did not expressly address the issue of manual review, it nonetheless concluded that the FDIC's form of production—there, as here, based on a search term production—met its Rule 34 obligations. *Id.* at *5-6.

The approaches adopted by this Court and others in the foregoing cases are consistent with *The Sedona Principles*, published by a nonprofit legal policy research and education organization comprised of judges, attorneys, and electronic discovery experts. *See The Sedona Principles* (Second Edition) June 2007, p. 57, comment 11).[6] *The Sedona Principles* provide that "[a] responding party may satisfy its good faith obligation to preserve and produce relevant electronically stored information by using electronic tools and processes, such as data sampling, searching, or the use of selection criteria, to identify data reasonably likely to contain relevant information." *Id.*

---

[6] Available at http://www.sos.mt.gov/Records/committees/erim_resources/A%20-%20Sedona%20Principles%20Second%20Edition.pdf (last visited April 14, 2015).

### 2.     A Manual Responsiveness Review Would Impose Undue Burden on the FDIC-R With Little Benefit to Defendants.

A manual review of the ESI prior to production would offer scant benefit to Defendants.  Defendants have at their disposal sophisticated electronic discovery tools, which they almost certainly will use rather than manually reviewing each page that the FDIC-R produces.[7]  *See St. Paul* Order, No. 11-CV-00167 (denying motion to compel where defendant had same ability as FDIC-R to search ESI); *In re Lorazepam and Clorazepate Anti-trust Litig.*, 300 F. Supp. 2d 43, 47 (D.D.C. 2004) (producing party not required to provide index where it produced ESI in searchable form); *Zakre v. Norddeutsche Landesbank Girozentrale*, No. 03 CIV. 0257(RWS), 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004) (permitting production of searchable email disc without prior responsiveness review because "search function will allow [the requesting party] to locate those emails responsive to her requests").

---

[7] The storage costs of that production would be modest and relatively insubstantial for Defendants.  The FDIC-R offered to host all produced data in a Relativity litigation database for Defendants' benefit, at a fraction of the cost the FDIC-R would bear in providing this service.  (Rivard Decl. ¶ 14.)  The FDIC-R requires only that Defendants collectively pay $10 per month per gigabyte of data hosted in the database, well below the cost the FDIC-R will actually pay its vendor.  (*Id.*)  Defendants would bear no further costs for the benefit of accessing the data in a sophisticated tool that comes at significant costs to the FDIC-R.  Thus, if Defendants prefer not to use the tools their law firms likely license independently, the FDIC-R has made sophisticated litigation software available.

Furthermore, requiring a manual responsiveness review would impose an undue burden on the FDIC-R.  The FDIC-R's preliminary search terms returned over 150,000 unique documents; requiring manual review of this quantity of documents would be a laborious, costly, and time-consuming task.  (Rivard Decl. ¶ 11.)  Not only is the volume of documents large, but the documents are likely to be marginally relevant at best, as the FDIC-R produced the bulk of the "core" responsive documents in its possession as part of its Phase I production.[8]  (*Id.* ¶ 13; Exh. A ¶ 8(a).)  The  GDBF, Renasant Bank, and the FDIC-C will be making their own productions, which together with the FDIC-R's Phase I production, likely constitute the lion's share of responsive documents.  (*See* ECF Nos. 54, 56, 57.) Requiring the FDIC-R to perform a manual review of each page it produces would be unduly burdensome.  Fed. R. Civ. P. 26(c)(1)(C).

Moreover, as courts have recognized in other cases brought by the FDIC (as a receiver), the former officers and directors of a failed bank are more familiar with the bank's documents than the receiver.  The same is true here, where the Defendants, former CBT officers and directors, worked with CBT's documents long before the FDIC-R entered the picture.  They are well situated to perform any

---

[8]   The reason the volume of ESI is large, but largely of little relevance, is the expansive sweep of Defendants' Requests for Production.

additional searches of the ESI following production.  *See, e.g.*, *FDIC v. Brudnicki*, 291 F.R.D. 669, 677 n.12 (N.D. Fla. 2013); *Giannoulias*, 2013 WL 5762397 at *3. Courts have recognized that, under similar circumstances, the production process "will not result in a document dump that hides the proverbial 'smoking gun' in an ocean of production." *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of New Mexico*, No. CIV 09-0885 JB DJS, 2010 WL 4928866, at *7 (D.N.M. Oct. 22, 2010) (citation omitted) (ordering production without manual review where requesting party was "equally competent to perform" search of ESI).

The reasonableness of the FDIC-R's approach here is underscored by the fact that, in practice, the FDIC in its receivership capacity (outside of Phase I, targeted productions like the one the FDIC-R has already substantially completed here) has almost never performed a manual review of bank ESI prior to production, and instead identifies responsive bank documents through the use of search terms generated in collaboration with defendants, as proposed here.  (*Id.* ¶ 16.)

### 3.   The *Briscoe* and *Stovall* Cases Involved Different Circumstances.

The decision in *FDIC v. Briscoe*, No. 1:11-cv-02303-SCJ (N.D. Ga. June 4, 2013), ECF No. 98 (attached hereto as Exhibit F) should not be construed as requiring a manual review here.  First, while the *Briscoe* court ordered such a review on the facts of that case, it noted that the FDIC (as receiver for Haven

15

Trust) did not contend that it would produce documents as kept in the usual course of business. *Id.*, slip op. at *9. The court therefore ordered a responsiveness review in order for the FDIC, as receiver, to organize and label documents under Rule 34(b)(2)(E)(i). *Id.* Any reliance on *Briscoe* is misplaced because the FDIC-R here proposes to produce documents as kept in the usual course of business, and Defendants have agreed that it may do so.

Nor does the Court's order in *FDIC v. Stovall*, No. 2:14-cv-00029-WCO (N.D. Ga. Oct. 23, 2014), ECF No. 42 ("*Stovall* Order") (attached hereto as Exhibit G), require a responsiveness review here. The parties in *Stovall* did not address the issue of whether, assuming the FDIC (as receiver for a different bank) produced documents as they were kept in the ordinary course of business, a manual review was required. Therefore, the parties did not present the Court with the substantial authority holding that searches of ESI satisfy a party's Rule 34 obligations even in the absence of a manual review. *See FDIC as Receiver for Habersham Bank's Mot. to Adopt ESI Protocol*, No. 2:14-cv-00029-WCO, ECF No. 33 at 5-9. Because the Court was not presented with the arguments and authority cited herein, *Stovall* does not control the present dispute. As in *Briscoe*, the *Stovall* Court ordered the FDIC-R to conduct a manual review in connection with organizing and labeling its production. *Stovall* Order, No. 2:14-cv-00029-WCO, slip op. at 6. As

16

explained above, that reasoning does not apply here because the FDIC-R plans to produce ESI as it is kept in the ordinary course of business, pursuant to Rule 34(b)(2)(E)(i), and consistent with 12 U.S.C. § 1820(f). Moreover, as the Court noted in *Stovall*, the FDIC as receiver for a different failed bank did not make a factual showing of undue burden. *Stovall* Order, No. 2:14-cv-00029-WCO, slip op. at 6-7. Here, the FDIC-R has demonstrated the substantial burden and extreme disproportionality to any benefit to be achieved, of a manual review. The *Stovall* Order provides little guidance here. (*See* Rivard Decl. ¶¶ 4, 7, 10-12.)

**B.      The FDIC-R Should Not Bear the Cost of Converting ESI From Native Format, the Form in Which it is Ordinarily Maintained, to Static Image Format.**

The FDIC-R also proposes in its ESI protocol to produce ESI in native format. While Defendants request that all files be produced as static images, the costs associated with converting the FDIC-R's production from native format to static images far outweigh any benefit to Defendants. Accordingly, this Court should allow the FDIC-R to produce in native format—*at no cost to Defendants*—or alternatively require Defendants to bear the cost of conversion.

Under Rule 34(b)(1)(C), a request for production of ESI "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). However, the Advisory Committee has made clear that

"[t]he responding party also is involved in determining the form of production."
*Id.*, Advisory Committee note 2006.  Where the parties disagree, as they do here, it
falls to the court to resolve the dispute.  *Id.*  In doing so, "[t]he court is not limited
to the forms initially chosen by the requesting party" (*id.*), and may consider the
burden and expense to the responding party of producing in the requested format.
*See Westdale Recap Props., Ltd. v. NP/I&G Wakefield Commons, LLC*, 2013 WL
5424844, *6 (E.D.N.C. Sept. 26, 2013) (rejecting the requested format for
production of ESI and adopting the producing party's proposed format at least in
part due to the proportionality between the need and the burden (citing *In re
Jemsek Clinic, P.A.*, 2013 WL 3994663, at *9 (Bankr. W.D.N.C. Aug. 2, 2013)));
*In re Porsche Cars North Am., Inc.*, 279 F.R.D. 447, 449 (S.D. Ohio 2012)
(recognizing that the producing party may object to a party's requested format for
production of ESI as "unduly burdensome").[9]

---

[9] The proportionality requirements of Rule 26 provide additional support for
considering the burden on the producing party when determining the appropriate
format for production.  Under Rule 26(b)(2)(C)(iii), the court may limit the extent
of discovery otherwise allowable where "the burden or expense of the proposed
discovery outweighs its likely benefit . . . ."  All discovery, including electronic
discovery, is subject to the proportionality limitations imposed by Rule 26.  *See
Westdale Recap Props.*, 2013 WL 5424844, at *3, 6 (considering the appropriate
format of production and citing Rule 26(b)(2)(C)(iii)).

Moreover, with respect to ESI specifically, Rule 26 provides that a responding
party "need not provide discovery of [ESI] from sources that the party identifies as

Native format is a routinely approved and reasonably usable format of production.   By producing in native format, the FDIC-R will be producing searchable files with metadata intact.   Not surprisingly, some courts have expressed a preference for the production of ESI in its native format when deciding between native files and static images.  *See In re Porsche Cars North Am., Inc.*, 279 F.R.D. at 450.

Conversely, complying with Defendants' request to convert and produce native files in a static image format will require the FDIC-R to incur substantial burden and expense with no countervailing benefit to Defendants.  It will cost the FDIC-R $.03 per page to convert ESI from the native format in which it is ordinarily maintained to static images.  (Rivard Decl. ¶ 12.)  The FDIC-R's initial estimates indicate that Phase II is likely to involve over 150,000 unique documents.  (*Id.* ¶ 10.)  If each of these files contains an industry-standard seven printed pages, the FDIC-R would be producing over 1,050,000 pages at a cost of

---

not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).  While the FDIC-R is not refusing to provide any responsive data (indeed, it agrees to produce in native format at no cost to Defendants), the provision is still instructive: a requirement that the FDIC-R produce as static images would make the data unreasonable to obtain because of the undue burden or cost associated with the conversion.  *See Rodriguez-Torres v. Gov't Dev. Bank of Puerto Rico*, 265 F.R.D. 40, 43-44 (D.P.R. 2010) (cost of $35,000 to produce certain ESI rendered the ESI "not reasonably accessible because of the undue burden and cost").

over $31,500.   (*Id.* ¶ 12.)    There is simply no good reason for imposing that significant cost on the FDIC-R.

Moreover, Defendants have failed to identify any actual problems with a native format production.   *See In re Netbank, Inc. Secs. Litig.*, 259 F.R.D. 656, 681 (N.D. Ga. 2009) (ordering production in native format over static images where party seeking to produce as static images listed only hypothetical problems with native format).   For example, given the sophistication and resources of both groups of Defendants' *four* large law firms, Defendants undoubtedly have access to the software required to read native files.[10]  Moreover, the FDIC-R has offered to host the native production in a Relativity database for Defendants' benefit, asking only that Defendants pay a modest share of the costs associated with doing so.   (Rivard Decl. ¶ 14.)   Additionally, requiring the FDIC-R to convert its entire ESI production from native files to static images would be wasteful and

_____

[10] Indeed, Troutman Sanders LLP, which represents all Defendants other than Mr. Boggus, owns and operates an electronic discovery vendor named Troutman Sanders eMerge®.   (*See* http://tsemerge.com (last visited April 14, 2015).)   On its website, eMerge explains that it uses the "highly-rated review platform – Relativity"—the same ESI platform used by the FDIC-R.   (*See* http://tsemerge.com/technology (last visited April 14, 2015).)   The eMerge website describes the company's ESI expertise, stating that it "provide[s] matter-specific solutions to manage [ESI] effectively and defensibly" (http://tsemerge.com), and "constantly searches for ways to improve efficiencies through technology by evaluating new technology and improving our protocols and practices for using existing technologies."  (http://tsemerge.com/technology.)

unnecessary, as only a small fraction of the many thousands of files to be produced will likely ever be used as deposition or trial exhibits.

And to the extent that Defendants argue that the inability to brand the document with a unique identifier (*i.e.*, a "bates number") will cause an issue, at least one court in this district has expressed its "confiden[ce] that the precision of record citations can be appropriately dealt with should [the party] desire to use any of the documents at issue as exhibits or evidence." *Netbank*, 259 F.R.D. at 681. Any complaint regarding a purported lack of bates numbers is a non-issue. First, the FDIC-R's proposed ESI Protocol provides that each native file produced "will be renamed at the file level with a Bates number in the following format: FDIC R CRES-0000001." (Exh. A at 13.) Thus, the native files can and *will* be Bates numbered. Second, most litigation databases, including Relativity, have the ability to automatically include such a designation when the document is printed. (Rivard Decl. ¶ 15.) And third, in the extremely unlikely event that none of the Defendants' four law firms can print documents with their unique identifiers, there is a cheap, low-tech solution: the document identifier can be *hand written* on the document before it is used at a deposition or attached to a filing. Accordingly, the burden to the FDIC-R of producing in static image format far outweighs the benefit in honoring Defendants' preferences.

Alternatively, if this Court requires the FDIC-R to convert the documents to static images, Defendants should bear the burden of conversion. The FDIC-R has already incurred more than $91,000 to collect, process and upload the nearly 26 million bank files and database records into the FDIC-R's repositories. (*Id.* ¶¶ 4, 9.) A $.03 cost per page to convert the produced files to static images is modest in comparison. *See Brudnicki*, 291 F.R.D. at 676-77 (holding that $.06/page was an "extremely modest" expense and one "that the[] Defendants should be able to bear without impacting their ability to mount a vigorous defense to the claims in this case"). Moreover, this cost is far less expensive than the standard expense of photocopying a paper document, which would be the requesting party's responsibility under traditional paper discovery and which some courts have likened to the cost of electronic conversion. *Id.* at 676.

In addition, the proportionality limitations of Rule 26 weigh in favor of Defendants bearing the cost of conversion.[11] Defendants' discovery requests are broad, and many do not call for the production of targeted documents. In addition,

---

[11] When weighing proportionality, some courts consider, among other things, "(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the purposes for which the responding party maintains the requested data; (4) the relative benefit to the parties of obtaining the information; (5) the total cost associated with the production; (6) the relative ability of each party to control costs and its incentive to do so; and (7) the resources available to each party." *Brudnicki*, 291 F.R.D. at 676-77

the FDIC-R's initial collection and uploading of CBT's documents was a reasonable and appropriate way to control the costs and burden associated with discovery of ESI. *See id.* at 677. The cost of conversion is small in comparison, and Defendants have the ability to control those costs by precisely defining search terms and future document requests. If the costs are not shifted *during* discovery, Defendants will have less incentive to take steps to reduce the total cost of discovery in this litigation.

For these reasons, production in native format is appropriate, and the conversion to static images is an unnecessary cost for either side to incur. In the alternative, however, this Court should require Defendants to bear the cost of conversion.

## III.  <u>CONCLUSION</u>

The Court should not require the FDIC-R to manually review each page of ESI that it produces to Defendants, following the application of agreed-upon search terms. Courts regularly hold that use of electronic searches to identify presumptively responsive ESI comports with Rule 34's requirements, including at least two recent decisions in this district in cases brought by the FDIC (as receiver for other failed banks) against former bank officers and directors. *Stovall* is not to the contrary because it did not squarely address the issue; rather, it ordered a

review for the purpose of organizing and labeling documents, and where the plaintiff did not make a factual showing of undue burden. The FDIC-R has provided a detailed factual showing of the undue burden that a page-by-page manual review would impose on the facts of this case. And such a review is not necessary, because Defendants have access to the sophisticated software with which to analyze and search the FDIC-R's production.

Nor should the Court require the FDIC-R to produce its ESI in static image format, rather than the native, searchable format in which the ESI is maintained. Rule 34, the 2006 Advisory Committee notes, and cases interpreting Rule 34 all make clear that the requesting party may not unilaterally dictate the form of production, but that the responding party also is involved in determining the form of production. Courts routinely approve native format productions, and due to its searchability and metadata, native format is more usable than static image files. Should the Court order a production in static image format, the proportionality requirements of Rule 26 call for Defendants to bear the cost of converting native files to static images. Placing the burden on Defendants is eminently reasonable in light of both the modest cost of conversion the FDIC-R seeks to recoup ($.03/page) and the significant outlays the FDIC-R has already made processing documents, which it does *not* seek to recoup—over $91,000. (Rivard Decl ¶ 9.)

24

For the foregoing reasons, Plaintiff FDIC-R respectfully requests that the Court adopt its ESI protocol attached hereto as Exhibit A.

Dated this 14th day of April, 2015.

Respectfully submitted,

_/s/ Samuel D. Almon_
Samuel D. Almon
Georgia Bar No. 141432
SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street, NW
Atlanta, GA 30309
Tel:  (404) 437-7000
Fax: (404) 437-7100
salmon@schiffhardin.com

Antony S. Burt (admitted *pro hac vice*)
Paula M. Ketcham (admitted *pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
aburt@schiffhardin.com
pketcham@schiffhardin.com

*Attorneys for the Federal Deposit Insurance Corporation, as Receiver for Crescent Bank & Trust Company, Plaintiff*

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1 N.D. Ga., I hereby certify that this BRIEF IN SUPPORT

OF PLAINTIFF'S MOTION TO ADOPT ESI PROTOCOL has been prepared in

Times New Roman 14 point.

*/s/ Samuel D. Almon*
Samuel D. Almon

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for CRESCENT BANK & TRUST COMPANY,** | ) ) ) ) ) ) | **CIVIL ACTION NO. 2:13-cv-00162-WCO** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **J. DONALD BOGGUS, JR., CHARLES R. FENDLEY, JOHN S. DEAN, SR., RYKER J. LOWE, and RICHARD M. ZORN,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 14th day of April, 2015 filed the foregoing

PLAINTIFF'S MOTION TO ADOPT ESI PROTOCOL with the Clerk of Court

using the CM/ECF system, which will automatically send e-mail notification of

such filing to the following attorneys of record:

W. Scott Sorrels
Georgia Bar No. 667074
Yvonne Marianne Williams-Wass
Georgia Bar No. 360368
SUTHERLAND ASBILL &
    BRENNAN LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
Tel: (404) 853-8000
Fax: (404) 853-8806
scott.sorrels@sutherland.com
gabe.mendel@sutherland.com
yvonne.williams-wass@sutherland.com

Barry Dennis Hovis
MUSICK, PEELER & GARRETT, LLP
601 California Street
San Francisco, CA 94108
Tel: (415) 281-2000
b.hovis@mpglaw.com

J. Timothy Mast
Georgia Bar No. 476199
Mary M. Weeks
Georgia Bar No. 559181
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308
Tel: (404) 885-3000
Fax: (404) 885-3900
tim.mast@troutmansanders.com
mary.weeks@troutmansanders.com

/s/ Samuel D. Almon

Samuel D. Almon
Georgia Bar No. 141432
SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street, NW
Atlanta, GA 30309
Tel:  (404) 437-7000
Fax: (404) 437-7100
salmon@schiffhardin.com

*Attorneys for the Federal Deposit Insurance
Corporation, as Receiver for Crescent Bank &
Trust Company, Plaintiff*

28