**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for CRESCENT BANK & TRUST COMPANY, | ) ) ) ) ) | |
| | ) | CIVIL ACTION FILE |
| | ) | NO. 2:13-cv-162-WCO |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. DONALD BOGGUS, JR., | ) | |
| CHARLES R. FENDLEY, JOHN S. | ) | |
| DEAN, SR., RYKER J. LOWE, and | ) | |
| RICHARD M. ZORN, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
TO ADOPT FDIC's ELECTRONICALLY STORED INFORMATION
("ESI") PROTOCOL**

Defendants J. Donald Boggus, Jr., Charles R. Fendley, John S. Dean, Sr.,

Ryker J. Lowe, and Richard M. Zorn (collectively the "Defendants"), by and

through their undersigned counsel, respond to the Motion to Adopt ESI Protocol

("the Motion") filed by the Federal Deposit Insurance Corporation ("FDIC-R"), as

Receiver for Crescent Bank & Trust Company, as follows:

## I.     INTRODUCTION

The Court may be experiencing déjà vu:  The FDIC-R's Motion presents only disputed two issues concerning the parties' ESI Protocol, issues that this Court ruled upon—in Defendants' favor—less than a year ago in another FDIC receivership suit.  *See FDIC v. Stovall*, No. 2:14-cv-00029-WCO (N.D. Ga. Oct. 23, 2014), ECF No. 42 (hereinafter "*Stovall* Order," attached to FDIC-R's Mot. as Ex. G).  Here, as in *Stovall*, the FDIC-R seeks to shift to Defendants the cost of reviewing the FDIC-R's ESI production for responsiveness and of converting the responsive documents to static images.  But the only difference between this case and *Stovall*, for purposes of this Motion, is that it involves a different bank— Crescent Bank & Trust Company ("Crescent" or "the Bank").  Here, just as in *Stovall*, the FDIC-R possesses all of Crescent's records and yet asks Defendants to pay for the review and production of documents that are necessary to their defense. And here, just as in *Stovall*, the Court should reject the FDIC-R's proposed ESI Protocol on those two issues.  This ESI dispute on a settled issue—a tactic the FDIC-R is using, during a limited discovery period, to limit Defendants' access to documents exclusively within the FDIC-R's possession—disadvantages Defendants in preparing witnesses for depositions and in working with experts.

2

Accordingly, Defendants respectfully ask this Court to deny the FDIC-R's

Motion and to implement Defendants' proposed ESI Protocol, attached hereto as

Exhibit B, which differs from the FDIC-R's protocol in only two respects:  It

requires the FDIC-R, pursuant to Rule 34, to (1) conduct a responsiveness review

of documents identified through the use of search terms before producing its ESI to

Defendants, and (2) bear the cost of converting responsive ESI to static images.[1]

## II.    BACKGROUND

The FDIC-R has sued five individual officers and directors of Crescent,

alleging millions of dollars in damages from six loans that were approved by the

Bank between 2006 and 2009.  The FDIC-R cherry-picked six loans—out of

hundreds of loans approved by Defendants over the years—that eventually

defaulted in the wake of the greatest economic catastrophe experienced in

generations and seeks to recover damages that would be personally ruinous to each

Defendant.  The FDIC-R's hindsight-based narrative will not withstand scrutiny.

As the evidence—including the Bank's documents in the FDIC-R's

possession—will demonstrate, each of these six loans was properly underwritten,

approved in accordance with the Bank's loan policy, and reflected reasonable

---

[1] Defendants attach hereto as Exhibit A a red-lined version of the FDIC-R's
proposed ESI Protocol.  A "clean" version of the Defendants' revised proposed
ESI Protocol is attached as Exhibit B.

business judgments at the time.  The tens of thousands of documents exclusively within the FDIC-R's possession are critical to Defendants' ability to prove the Bank employed reasonable processes for underwriting and approving the six subject loans.  But the FDIC-R, through its proposed ESI Protocol, asks the Court to unreasonably and unfairly increase the burden on Defendants to mount these valid defenses.

While negotiating an ESI protocol in this action, Defendants proposed to use the ESI protocol adopted by the Court's Order in *Stovall* and to work through any remaining concerns without the Court's intervention.  (*See* email of Feb. 18, 2015, attached as Ex. C).  The two issues presented in *Stovall* were (1) "whether [the FDIC-R] is required to conduct a responsiveness review of any ESI prior to production"—to which this Court answered, "Yes"—and (2) "whether [the FDIC-R] may charge a $0.06 per page conversion cost to offset the expense of converting ESI from its native format to static images"—to which this Court answered, "No." *Stovall* Order at *2.[2]  Defendants proposed using the *Stovall* ESI Protocol because it reached a reasonable conclusion on these two issues and because it would

---

[2] As a result of vendor pricing changes, the cost of conversion in this case is $0.03 per page.

obviate the need for protracted discussions or litigation concerning these issues settled by this Court.

The FDIC-R, however, has used the parties' negotiation over an ESI protocol as an opportunity to slow-play production of documents exclusively within their possession—documents that are necessary for Defendants to prepare witnesses and work with experts during a limited discovery period.  Although the FDIC-R initially responded that it envisioned only "some tweaks" to the *Stovall* ESI Protocol (*see* email of Mar. 3, 2015, attached as Ex. D), the FDIC-R stated during the meet-and-confer process that it would not accept the *Stovall* protocol to the extent it required a responsiveness review or to the extent the FDIC would be required to pay for the production of static images—the very positions that the *Stovall* Order rejected.

In response, Defendants proposed a compromise:  If the FDIC-R would agree to the two conditions approved by the *Stovall* Order—conducting a responsiveness review and converting documents to static images—Defendants would not ask the FDIC-R to specify which documents are responsive to specific discovery requests.  The FDIC-R rejected this compromise and subsequently filed its Motion.

## III.   ARGUMENT

The FDIC's Motion attempts to tiptoe through the decisions of this and other Courts, including *Stovall*, to piece together a justification for its unbalanced proposal.  This Court, however, has consistently refused to abandon the requirements of Rule 34, including in receivership cases, and to shift the burden of discovery to defendants.[3]  The FDIC-R, like other government agencies, is not entitled to "special consideration concerning the scope of discovery, especially when it voluntarily initiates an action."  *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

---

[3] *See Stovall* Order at \*3-9 (requiring a responsiveness review, finding that "defendants are entitled to their preferred form of production," and declining to impose a conversion cost per page of production); *FDIC v. Whitley*, No. 2:12-cv-00170-WCO (N.D. Ga. June 25, 2013), ECF No. 81, at \*38 (concluding that a per page conversion cost "is simply another cost of production that plaintiff, as the responding party, must bear") (hereinafter "*Whitley* Order," attached as Ex. E); *FDIC v. Briscoe*, No. 1:11-cv-2303-SCJ (N.D. Ga. June 4, 2013), ECF No. 98, at \*8-13 (requiring a responsiveness review following the use of search terms to identify potentially relevant documents and denying the FDIC's request to impose conversion costs on defendants) (hereinafter "*Briscoe* Order," attached to FDIC-R's Mot. as Ex. F); *FDIC v. Klein*, No. 1:12-cv-0896-RLV, ECF No. 104, at \*3 (N.D. Ga. Dec. 13, 2012) (rejecting the FDIC's ESI proposal and ordering the FDIC to "bear its own discovery costs") (hereinafter "*Klein* Order," attached hereto as Ex. F); *FDIC v. St. Paul Mercury Ins. Co.*, No. 2:11-cv-00167-RWS, ECF No. 65, at \*4 (N.D. Ga. May 24, 2012) (recognizing that the "Federal Rules allow a requesting party to 'specify the form or forms in which electronically stored information is to be produced'") (citations omitted) (hereinafter "*St. Paul* Order," attached to FDIC-R's Mot. as Ex. E).

The FDIC-R thus cannot escape a fundamental tenet of discovery:  It is the responding party's burden to bear the costs of production.  *See Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 148 (D. Mass. 2009) ("For all discovery, including electronic discovery, the presumption is that parties must satisfy their own costs in replying to discovery requests."); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("[T]he responding party must bear the expense of complying with discovery requests.").  None of the FDIC-R's arguments rebut that basic presumption.

### A.    The *Stovall* Order is dispositive.

Contrary to the FDIC-R's assertion, the *Stovall* Order is dispositive.  As discussed above in Section II, this Court decided both issues presented here—a responsiveness review and production of static images—in Defendants' favor.  Thus, Defendants request that the FDIC-R, as the responding party, bear the same costs in this case.  No more, no less.

The FDIC attempts to distinguish *Stovall* and *Briscoe* by insisting that, as opposed to those cases, the FDIC-R will produce the Crescent ESI as it is kept in the ordinary course of business, pursuant to Rule 34(b)(2)(E)(i).  That distinction is irrelevant.  *Stovall* and *Briscoe* reject the notion that the FDIC-R can satisfy its production burden merely by running search terms and producing a "grab bag" of

documents. *Briscoe* Order at \*9.[4] Moreover, the Court's Order in *Stovall* rests on

the idea that the production of ESI is subject to requirements comparable to all

other documents—namely, that ESI should not be produced as an "undifferentiated

mass" that obscures significant documents and thus hinders the usefulness of the

production. *Stovall* Order at \*4-5. Simply put, producing documents as kept in the

ordinary course of business does not relieve the FDIC-R from its duty, as the

producing party, to determine which documents are responsive rather than

dumping tens of thousands of potentially irrelevant documents on Defendants.

Such an approach would "raise unnecessary obstacles for the requesting party."

*Briscoe* Order at \*9 (quoting Fed. R. Civ. P. 34 advisory committee note on 2006

Amendment). Further, that hide-the-ball approach has been rejected by other

courts. *See, e.g.*, *FDIC v. Appleton*, 2012 WL 10245383, at \*4 (C.D. Cal. Nov. 29,

2012) (finding it "insufficient for plaintiff to simply direct defendants to the

database and inform them that all responsive documents are contained herein");

*City of Colton v. Am. Promotional Events*, 277 F.R.D. 578, 585-86 (C.D. Cal.

---

[4] *See also William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D.N.Y. 2009) (warning of the unreliability of search terms); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 109 (S.D.N.Y. 2012) ("There is increasingly strong evidence that '[k]eyword search[ing] is not nearly as effective at identifying relevant information as many lawyers would like to believe.'") (alterations in original) (citations omitted).

2011) (observing that Rule 34 requires the FDIC to organize and label documents to correspond to discovery requests).

The FDIC-R also cites several cases in which it contends that a court did not require the FDIC-R to conduct a responsiveness review. *See* FDIC-R Mot. at 10-12. Defendants acknowledge that a handful of cases from other jurisdictions have sided with the FDIC on this issue. *See id.* (citing *Giannoulias* and *Bowden*). But those orders were issued before *Stovall,* and those decisions present no compelling rationale for revisiting the position subsequently taken by this Court in *Stovall,* this Court's earlier *Briscoe* Order, and the positions of other courts outside this jurisdiction. And, unlike *Briscoe* and *Stovall,* the FDIC-R's remaining cases, including those from this Court, do not squarely address the responsiveness-review issue now before the Court. *See id.* (citing *Appleton*, *Baldini*, *Loudermilk*, *Baker*, and *St. Paul*).[5]

---

[5] In fact, *Appleton* and *Baldini* weigh in favor of Defendants' position because they recognize that Rule 34 does not permit the FDIC to bury responsive documents. *See Appleton*, 2012 WL 10245383, at *4 (finding it "insufficient for plaintiff to simply direct defendants to the database and inform them that all responsive documents are contained herein"); *FDIC v. Baldini*, 2014 WL 1302479, at *8 (S.D. W. Va. Mar. 28, 2014) ("The Rule does not contemplate that Plaintiff may pass off its responsibility to search the ESI and to provide ESI organized and labeled in conformity with the requests to Defendants.").

As in *Stovall*, the FDIC-R should be required to conduct a responsiveness review to eliminate irrelevant documents from its production and to convert the production to static images.

**B.      The FDIC-R fails to rebut the presumption that it is required to conduct a responsiveness review.**

Also unavailing are the FDIC-R's arguments that a manual responsiveness review would impose undue burden on the FDIC-R with "little benefit to Defendants." FDIC-R Mot. at 13.

The purported burdens that the FDIC-R identifies are nothing more than normal discovery burdens, and the FDIC-R offers no support for its conclusory statement that the ESI that Defendants seek would be only "marginally relevant." *Id.* at 14-15. To the contrary, emails and other ESI are likely to support Defendants' defenses. For example, the FDIC-R contends that Crescent's underwriting process was deficient because certain documents are not now in the hard-copy versions of the subject loan files. It is likely, however, that Defendants will locate many, if not all, of the purported "missing" documents in Crescent's ESI because such documents were either received electronically or scanned into Crescent's electronic databases.

The FDIC-R also contends that its proposal places "little burden" on Defendants because they can review the search results with their own

"sophisticated electronic discovery tools." *Id.* at 13.  But this misses the point.  All that Defendants could accomplish with their discovery tools is exactly what the FDIC-R's tools would accomplish: a narrower set of documents *to be reviewed* for responsiveness.  *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (recognizing search terms not as a solution to satisfying discovery obligations, but as consistent with developing a "comprehensive search strategy"); *see also Baldini*, 2014 WL 1302479, at *8 ("The Rule does not contemplate that Plaintiff may pass off its responsibility to search the ESI and to provide ESI organized and labeled in conformity with the requests to Defendants.").  The FDIC-R's proposal thus shifts to Defendants—without justification—its burden of reviewing documents for responsiveness.[6]  Where, as here, the FDIC-R seeks to recover millions of dollars in damages from each Defendant, it is not too much to ask the FDIC to bear the cost of conducting a responsiveness review (much less to produce documents with Bates numbers on each page).

---

[6] In an effort to compromise and to reduce the burden of the FDIC-R, Defendants agreed not to ask the FDIC-R to specify which documents are responsive to which specific document requests, and will accept a production of documents including metadata fields sufficient to satisfy the requirement that documents are kept in the normal course of business.  *See City of Colton*, 277 F.R.D. at 585.

**C.** **The FDIC-R fails to rebut the presumption that it is required to produce ESI in the format requested by Defendants.**

The FDIC-R contends that Defendants should pay for converting responsive documents from native files to static images, at a cost of $0.03 per page, because such costs would be too burdensome for the FDIC-R. But *Stovall* expressly rejected that argument. The FDIC-R presents no new arguments here to justify imposing the cost of conversion on Defendants.

First, the FDIC-R simply ignores that in *Stovall* this Court, under the same set of circumstances, required the FDIC-R to convert native documents to static images. *See Stovall* Order at *7-9 (finding that "defendants are entitled to their preferred form of production" and refusing to impose a per page conversion cost). Nor is *Stovall* an outlier: other courts have also rejected the FDIC-R's proposals to impose a conversion cost on individual officers and directors during discovery. *See Whitley* Order at *38; *Klein* Order at *3; *Briscoe* Order at *6-13; *Baldini*, 2014 WL 1302479, at *9.

Second, rather than offer a reason why the *Stovall* Order should not control here, the FDIC-R's Motion extols the virtues of a native format production. But this, again, is beside the point. As this Court stated, "[a] requesting party is entitled to specify the form in which ESI will be produced." *Stovall* Order at *7; *see also* Fed. R. Civ. P. 34(b)(1)(C); *Briscoe* Order at *11 (acknowledging the

requesting party's right to specify a form for production).  Defendants have specified their preference that the production include native files and static images, and for good reason:  The production of Bates labeled TIFF files aids the organization and use of the documents, which is critical in situations, such as this one, where the original organization of documents is unavailable.

Third, the FDIC-R argues that Defendants should bear the cost of conversion (approximately $31,000, by the FDIC-R's estimate) because the FDIC-R has already expended over $91,000 on Crescent's documents.  FDIC-R Mot. at 20-22.  This contention obscures the FDIC-R's minimal expenses *in this litigation*.  As part of closing Crescent and selling its assets, the FDIC, in its capacity as receiver, incurred the purported $91,000 to scan, process, and upload the Bank's files and database records.  At the time of closure, however, there was no contemplation of any specific litigation against the officers and directors.  The costs incurred were unrelated to this litigation, much less to the FDIC-R's discovery obligations in this case.  The FDIC-R is effectively suing Defendants—individual officers and directors—for millions of dollars and, at the same time, shirking normal discovery obligations.  *See Briscoe* Order at *10-11 (rejecting same argument).  These costs are not of such magnitude to necessitate cost-shifting.

Finally, if the FDIC-R is not required to convert native documents to static images, Defendants will nevertheless undertake that task after the FDIC-R produces responsive documents—the sole effect of which is to shift the cost of conversion from the FDIC-R to Defendants.  The FDIC has failed to explain why it should not bear this routine cost of discovery.  *See Whitley* Order at *36-38 (recognizing that file formats may need to be converted as a standard cost of production).[7]  The FDIC-R therefore should be required to convert native files to static images, as Defendants reasonably have requested, and to bear the cost of conversion.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the FDIC-R's Motion, adopt Defendants' form of the proposed ESI Protocol (attached as Ex. B), and grant Defendants such other and further relief as it deems just and proper.

---

[7] Any consideration to shift normal discovery costs, such as these, to Defendants would be appropriate only at the conclusion of litigation and only if the FDIC were to prevail.  *See Whitley* Order at *37; *Briscoe* Order at *13.

14

Respectfully submitted, this 21st day of April, 2015.

**WILLIAMS & CONNOLLY LLP**

/s/  *Ryan T. Scarborough*
Ryan T. Scarborough (*pro hac vice*)
725 12th St., N.W.
Washington, DC  20005
202-434-5000 (Telephone)
202-434-5029 (Facsimile)
rscarborough@wc.com
*Attorney for Defendant J. Donald Boggus, Jr.*

**SUTHERLAND ASBILL & BRENNAN LLP**

/s/  *Yvonne M. Williams-Wass*
W. Scott Sorrels (No. 667074)
Yvonne M. Williams-Wass (No. 360368)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia  30309-3996
404.853.8000 (Telephone)
404.853.8806 (Facsimile)
scott.sorrels@sutherland.com
yvonne.williams-wass@sutherland.com
*Attorneys for Defendant J. Donald Boggus, Jr.*

**MUSICK PEELER & GARRETT, LLP**

/s/  *Barry D. Hovis*
Barry D. Hovis (*pro hac vice)*
Catherine M. Lee (*pro hac vice)*
601 California Street, Suite 1250
San Francisco, CA 94108
(415) 281-2000
b.hovis@mpglaw.com
c.lee@mpglaw.com

*Attorneys for Defendants Charles R. Fendley, John S. Dean, Sr., Ryker J. Lowe, and Richard M. Zorn*

**TROUTMAN SANDERS LLP**

/s/   *J. Timothy Mast*
J. Timothy Mast (No. 476199)
Mary M. Weeks (No. 559181)
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308
(404) 885-3000
tim.mast@troutmansanders.com
mary.weeks@troutmansanders.com
*Attorneys for Defendants Charles R. Fendley, John S. Dean, Sr., Ryker J. Lowe, and Richard M. Zorn*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.


/s/ *Barry D. Hovis*
Barry D. Hovis (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April 2015, I electronically filed the

foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S

MOTION TO ADOPT ESI PROTOCOL with the Clerk of Court using the

CM/ECF system, which will automatically send notification of such filing upon

Counsel of Record:

> Samuel D. Almon
> SCHIFF HARDIN LLP
> One Atlantic Center, Suite 2300
> 1201 West Peachtree Street
> Atlanta, GA 30309
> salmon@schiffhardin.com
>
> Antony S. Burt
> Paula M. Ketcham
> John E. Tanagho
> SCHIFF HARDIN LLP
> 233 S. Wacker Drive, Suite 6600
> Chicago, IL 60606
> aburt@schiffhardin.com
> pketcham@schiffhardin.com
> jtanagho@schiffhardin.com

> /s/ *Barry D. Hovis*
> Barry D. Hovis (*pro hac vice*)